UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS  DIVISION

| | | |
|---|---|---|
| ROBERT S. KENTNER, | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | 1:03-cv-435-RLY-WTL |
| TIMOTHY R. DOWNEY INSURANCE, | ) | |
| INC.; DOWNEY RETIREMENT TRUST; | ) | |
| INDIANA PUBLIC EMPLOYERS PLAN, | ) | |
| INC.; TIMOTHY R. DOWNEY, | ) | |
| INDIVIDUALLY AND IN HIS | ) | |
| CAPACITY AS A MEMBER OF THE | ) | |
| BOARD OF DIRECTORS OF IPEP; AND | ) | |
| T. CHRISTOPHER DOWNEY, | ) | |
| INDIVIDUALLY AND IN HIS | ) | |
| CAPACITY AS A MEMBER OF THE | ) | |
| BOARD OF DIRECTORS OF IPEP, | ) | |
| Defendants. | ) | |

**ENTRY ON PENDING MOTIONS**

On October 20, 2004, Plaintiff, Robert S. Kentner, filed his Amended Second

Amended Complaint alleging a claim for unpaid wages under Indiana Code § 22-2-9 *et*

*seq*. (Count I), a claim for denial of benefits under the Employee Retirement and Income

Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq*., a claim for blacklisting under Indiana

Code § 22-5-3-1 and 2 (Count II), and a claim under 42 U.S.C. § 1983 for retaliation in

violation of the First Amendment (Count III).  In response, Defendant Timothy R.

Downey Insurance, Inc. ("Downey") filed counterclaims alleging defamation *per se*

(Counterclaim I), defamation *per quod* (Counterclaim II), tortious interference with a

1

business relationship (Counterclaim III), abuse of process (Counterclaim IV), and unjust enrichment/restitution (Counterclaim V).

On December 21, 2005, the parties filed the motions[1] now before the court. They are: (1) Defendants'[2] [Timothy R. Downey Insurance, Inc. and the Downey Retirement Trust] Motion for Summary Judgment; (2) Individual Defendants' Motion for Summary Judgment; (3) IPEP's Motion for Summary Judgment; (4) Plaintiff's Motion for Summary Judgment on a Portion of Plaintiff's Wage Claim Regarding His Earned, Banked But Unpaid Vacation Days, Sick Days, and Personal Days; (5) Plaintiff's Motion for Summary Judgment on Timothy R. Downey Insurance, Inc.'s Counterclaims of Defamation *Per Se* and Defamation *Per Quod*; (6) Plaintiff's Motion for Summary Judgment on Timothy R. Downey Insurance, Inc.'s Counterclaims of Tortious Interference With a Business Relationship and Abuse of Process, and (7) Plaintiff's Motion for Summary Judgment on the Issue of Timothy R. Downey Insurance, Inc. as Being Not the Real Party in Interest to Maintain its Counterclaims. For the reasons explained below, the court (1) **GRANTS** in part and **DENIES** in part Defendants' Motion

---

[1] The court previously ruled on the following motions: (1) Plaintiff's Motion for Partial Summary Judgment on His Wage Claim (Docket # 138); (2) Plaintiff's Motion for Summary Judgment on His Blacklisting Claim (Docket # 143); (3) Plaintiff's Motion to Dismiss Downey's Counterclaims I, II, III, IV, and V and for Partial Summary Judgment Pursuant to Indiana Code § 34-7-7-1 et. seq. (Docket # 140); and Defendants' Motion for Summary Judgment with respect to Plaintiff's wage claim for unpaid commissions and Plaintiff's blacklisting claim (Docket # 216).

[2] In this Entry, Defendants Timothy R. Downey Insurance, Inc., the Downey Retirement Trust, Timothy R. Downey, and T. Christopher Downey are referred to collectively as "Defendants".

2

for Summary Judgment; (2) **GRANTS** Individual Defendants' Motion for Summary

Judgment; (3) **GRANTS** IPEP's Motion for Summary Judgment; (4) **DENIES** Plaintiff's

Motion for Summary Judgment on a Portion of Plaintiff's Wage Claim Regarding His

Earned, Banked But Unpaid Vacation Days, Sick Days, and Personal Days; (5) **DENIES**

Plaintiff's Motion for Summary Judgment on Timothy R. Downey Insurance, Inc.'s

Counterclaims of Defamation *Per Se* and Defamation *Per Quod*; (6) **GRANTS** Plaintiff's

Motion for Summary Judgment on Timothy R. Downey Insurance, Inc.'s Counterclaims

of Tortious Interference With a Business Relationship and Abuse of Process, and (7)

**DENIES** Plaintiff's Motion for Summary Judgment on the Issue of Timothy R. Downey

Insurance, Inc. as Being Not the Real Party in Interest to Maintain its Counterclaims.

## I.    Factual Background

### A.    Downey's Contractual Arrangement with the Indiana Public Employer's Plan, Inc.

Downey is a private insurance agency located in Kokomo, Indiana, with various

books of business.  (Deposition of Randy Sapp, Defendants'[3] Ex. A at 5; Deposition of

Robert S. Kentner, Defendants' Ex. B at 217).  During Plaintiff's employment, Downey

was the attorney-in-fact and third party administrator for a separate entity known as the

Indiana Public Employers' Plan, Inc. ("IPEP").  (Defendants' Ex. B at 144).  IPEP is a

pool of Indiana governmental entities whose members pay contributions in exchange for

---

[3] For simplicity's sake, given the number of motions for summary judgment addressed in this entry, the court elects to use the exhibit numbers, where applicable, from Defendants' Motion for Summary Judgment (Docket # 216).

receiving various services from IPEP, including worker's compensation coverage for their employees.  (Deposition of Timothy R. Downey, Defendants' Ex. C at 4-5).  By joining IPEP, the members are able to share the risk with other members of the pool.  (Defendants' Ex. A at 26).  IPEP does not have, and never has had, any employees.  (Defendants' Ex. C at 64).

During Plaintiff's employment, Timothy R. Downey ("Tim Downey") was Downey's chairman and T. Christopher Downey ("Chris Downey") was its president.  (Defendants' Ex. C at 31; Deposition of T. Christopher Downey, Defendants' Ex. D at 6).  Tim Downey sits on the IPEP board, and Chris Downey is a former IPEP board member.  (Defendants' Ex. C at 5; Defendants' Ex. D at 9).

IPEP pays the claims of its members' injured workers, provides loss control services for its members, and provides safety training for its members.  (Defendants' Ex. A at 6).  Pursuant to a written contract, Downey acts as IPEP's attorney-in-fact to provide those services to others, including paying IPEP's claims, marketing IPEP, underwriting the members' contributions, and so forth.  (Defendants' Ex. A at 6, 29).  In exchange, Downey receives a monthly fee based upon the level of contributions to the plan.  (Defendants' Ex. A at 29).

### B.    Plaintiff's Employment with Downey

When Plaintiff was interviewing for his position with Downey, he met with Candy Hrpcha, former claims manager; Tim Downey, Chris Downey, Joff Boston, and Dick Norris.  (Defendants' Ex. B at 63).  All of these individuals were Downey employees.

4

(Declaration of Randy Sapp, Defendants' Ex. E at ¶ 3). On November 17, 1995, Hrpcha sent Plaintiff a letter offering him a position with Downey. (Defendants' Ex. B at 65, 70; Offer Letter, Defendants' Ex. F). Plaintiff began working for Downey in January 1996. (Defendants' Ex. E at ¶ 4).

As an employee of Downey, Plaintiff was paid out of Downey's funds. (Defendants' Ex. A at 156). His wages, including commissions from subrogation recoveries, were paid out of Downey's payroll account. (Defendants' Ex. A at 156). There was no transfer of funds from IPEP to Downey to pay Plaintiff's wages. (Defendants' Ex. A at 156). Plaintiff did not receive a paycheck from any other employer other than Downey during 1996-2002. (Defendants' Ex. B at 74). Plaintiff did not work for any other employer, nor did he receive a W-2 from any other employer from 1996-2002. (Defendants' Ex. B at 74).

Plaintiff received health insurance benefits, vacation, and retirement benefits from Downey. (Defendants' Ex. B at 152). Plaintiff received no benefits from IPEP. (Defendant's Ex. E at ¶ 5). Plaintiff was subject to Downey's personnel policies, and Downey reviewed his performance during his employment. (Defendants' Ex. B at 153, 155-56).

Plaintiff's employment agreement was with Downey, not IPEP, and he had no other employment agreements from 1996-2002. Plaintiff drafted his employment agreement, which specifically recited that his employer was Downey, not IPEP. (Defendants' Ex. B at 164-65, 421-22; Defendants' Ex. G). Plaintiff received

unemployment benefits from Downey, not from IPEP.  (Defendants' Ex. B at 169).

C.    **Plaintiff's Employment as Downey's In-House Counsel**

Plaintiff began working as a subrogation attorney for Downey in 1996. (Defendants' Ex. A at 38).  In the summer of 1996, he assumed the role of Claims Manager, but he still handled other legal issues for Downey because of his expertise as an attorney.  (Defendants' Ex. A at 39).  In 1998, Chris Downey removed Plaintiff from his Claims Manager position, at which time Plaintiff was simply Downey's corporate counsel.  (Defendants' Ex. A at 39-40).  From that point forward, Plaintiff was responsible for the more complicated claims that the new claims manager could not handle, subrogation claims, and legal claims that arose that affected Downey's daily activities.  (Defendants' Ex. D at 36).  Regardless of his title, Plaintiff was Downey's corporate counsel throughout his employment.  (Defendants' Ex. A at 43).

During Plaintiff's employment, Downey paid for him to attend various legal seminars for which Plaintiff received continuing legal education credit.  (Defendants' Ex. A at 62; Plaintiff's CLE records, Defendants' Ex. H).  Plaintiff represented to the Indiana Supreme Court that he was in-house counsel.  (Defendants' Ex. H).  Downey assigned Plaintiff various legal projects, including reviewing the legal documents involved in Downey's purchase of a new building in 2002.  (Defendants' Ex. B at 105).

Although Plaintiff disputes that he was Downey's attorney, the following facts are undisputed: In 2000, Plaintiff proposed a salary increase to Downey.  (Defendants' Ex. B at 80-81; Proposed Salary Increase, Defendants' Ex. I).  Plaintiff attached to his proposal

6

a survey from Altman Weil that showed the average salaries for in-house counsel. (Defendants' Ex. B at 83).  That same year, Plaintiff enlisted the services of a resume preparation service that required him to complete a questionnaire regarding his employment history and qualifications.  (Defendants' Ex. B at 90; 97-98).  Plaintiff represented to the resume service that he had "[n]early five years of experience as in-house counsel for an insurance entity."  (Defendants' Ex. B at 99).  He also listed his most recent or current position as being with Downey, and he included "in-house counsel" as his first job title with Downey.  (Defendants' Ex. B at 100-01).

For the tax year 2001, Plaintiff's W-2 form listed Downey as his employer and listed his occupation as "attorney."  (Defendants' Ex. B at 73, 75; Plaintiff's W-2 form, Defendants' Ex. J).  Plaintiff's business card with Downey identified him as Downey's "Legal Counsel."  (Defendants' Ex. B at 85-86; Plaintiff's business card, Defendants' Ex. K).  Although Plaintiff disputes this was his title, he never reported to Downey that his business card was inaccurate.  (Defendants' Ex. B at 87-88).  Additionally, Plaintiff's letterhead with Downey said "Attorney at Law" on it.  (Defendants' Ex. B at 89).  On his own self-evaluation, Plaintiff claimed that he handled "various legal matters" for Downey.  (Defendants' Ex. B at 142-43).  Plaintiff also performed legal research for Downey.  (Defendants' Ex. B at 144).

### D.      Downey Eliminates Plaintiff's Position

Downey terminated Plaintiff's employment on September 4, 2002, when Chris Downey and Randy Sapp informed him that Downey was eliminating his position.

7

(Defendants' Ex. B at 206).  Chris Downey had known for a long time that there was not enough work to justify having an in-house counsel, so he made the decision to terminate Plaintiff's position.  (Defendants' Ex. D at 47, 49).  At the time of Plaintiff's termination, Downey needed additional adjusters to deal with its insurance claims, so it hired two new adjusters following Plaintiff's termination.  (Defendants' Ex. A at 142; Defendants' Ex. E at ¶¶ 6, 7).

Chris Downey had no discussion with IPEP board members about the decision to eliminate Plaintiff's position.  (Defendants' Ex. D at 25).  He provided no notice to the IPEP board members, nor did he have any conversations with any of the board members regarding Plaintiff's termination.  (Defendants' Ex. D at 25-26).  Tim Downey did not mention Plaintiff's termination to any IPEP board members, and none of the other board members ever talked to him about terminating Plaintiff.  (Defendants' Ex. C at 12). Randy Sapp had no discussions with anyone from IPEP's board of directors discussing Plaintiff's discharge.  (Defendants' Ex. A at 15).  John Shanks, IPEP board president, was "shocked" when he first learned of Plaintiff's termination.  (Deposition of John Shanks, Defendants' Ex. L at 22-23).

Downey has not hired another in-house counsel since it terminated Plaintiff. (Defendants' Ex. B at 209; Defendants' Ex. E at ¶ 8).  Instead, outside counsel have assumed Plaintiff's legal duties.  (Defendants' Ex. C at 55-56).  Downey's adjusters now handle the subrogation files.  (Defendants' Ex. D at 51).

### E.    Plaintiff's Claims

#### 1.    Plaintiff's Wage Claim

Plaintiff alleges he is entitled to 20 vacation days, 10 sick days, and two personal days. (Defendants' Ex. B at 247). Downey's vacation days policy provides, in relevant part, that if a Downey employee leaves "for any reason (other than a reduction in force)," the employee is entitled to reimbursement for the number of vacation days the employee did not use. An employee could not bank more than 20 days at any one time. (Downey Insurance Procedures Manual, Vacation Days, Plaintiff's Ex. C).

Downey's personal days policy provides, in relevant part, "Employees who terminate employment are not eligible to receive compensation for unused personal days." (Downey Insurance Procedures Manual, Personal Days, Defendants' Ex. R).

Downey's sick days policy is "a benefit designed to provide income while the employee is unable to work due to illness" and "is not intended to provide additional vacation time." "Unused sick time is banked for future use. Each full time employee may accumulate (10 days) in his/her account." (Downey Insurance Procedures Manual, Sick Days, Defendants' Ex. S).

#### 2.    Plaintiff's ERISA Claim

Plaintiff's ERISA claim is premised upon his belief that Downey failed to pay him commissions on his subrogation files, and that therefore, he was not credited the proper amounts in his pension plan. (Defendants' Ex. B at 225). Once Downey terminated Plaintiff's employment, he was no longer a participant in the Downey Retirement Trust.

(Defendants' Ex. E at ¶ 10).  Plaintiff's compensation for calculating his pension benefit is the highest monthly average of his compensation from Downey for the three consecutive years of service that yielded the highest average while a participant in the plan, excluding compensation in the year his employment terminated.  (Defendants' Ex. E at ¶ 10).

### 3.    First Amendment Claim

In 1998, IPEP purchased a private insurance company called Employers Protective Insurance Company, Inc. ("EPIC").  (Defendants' Ex. A at 43; IPEP's Ex. 15(H)). Plaintiff participated in IPEP's purchase of EPIC by reviewing the purchase agreement and discussing the purchase with the other attorneys.  (Defendants' Ex. A at 44-45).  In the fall of 2001, Downey assigned Plaintiff the task of putting together a business plan for EPIC to submit to the Department of Insurance.  (Defendants' Ex. B at 234).  After submitting the business plan and doing some research, Plaintiff advised Tim and Chris Downey that IPEP's purchase of EPIC violated Indiana law.  (Defendants' Ex. B at 228).

Despite his purported advice to the Downeys, Kentner thereafter continued to work on the EPIC project and submit information to the Department of Insurance. (Defendants' Ex. E at ¶ 9; IPEP's Ex. 15(I)).  In fact, Plaintiff drafted a letter to the Department of Insurance in January 2002 in which he advised the Department that EPIC's capital would include money from IPEP, which had approved an infusion of cash into its subsidiary. (Defendants' Ex. N; IPEP's Ex. 15(I)).

**F.      Defendants' Counterclaims for Defamation, Tortious Interference and Abuse of Process**

In July 2003, Kentner served over 345 non-party document requests on IPEP members.  (Deposition of Robert S. Kentner, Defendants' Ex.[4] B at 290-91).  While his attorney signed the subpoena and document requests, Kentner ratified her actions. (Defendants' Ex. B at 313).  Kentner's requests focused upon Downey's use of IPEP funds to purchase EPIC:

Request No. 9:      Provide any documentation or legal opinion that justifies or explains how your public entity can participate in IPEP given IPEP's investment in EPIC and the purchase of investments contrary to IC 5-13-9-1 and IC 36-1-3-8(a)(11).

Request No. 10:      Provide any documentation or legal opinion that justifies or explains why your public entity failed to object to IPEP's investment in EPIC and the purchase of investments contrary to IC 5-13-9-1 and IC 36-1-3-8(a)(11).

Request No. 13:      Provide any documentation or legal opinion that supports your public entities' justification for joining/maintaining its ownership/participation in IPEP despite the prohibition set forth in Indiana Code § 36-1-7 limiting a public entities' (sic) participation set forth in the statutes to entities other than private interests like Timothy R. Downey Insurance Inc.

After IPEP members received Kentner's non-party document requests, Downey began receiving a large number of phone calls from not only IPEP members, but their counsel and brokers, who were concerned about the requests.  (Deposition of Randy Sapp, Defendants' Ex. A at 187-88).  When they called Downey, IPEP members asked it "Well, who is this guy? He worked for you.  Why is he alleging this?"  (Deposition of T.

_____

[4] The exhibits are taken from Defendants Timothy R. Downey Insurance, Inc.'s Brief in Response to Plaintiff's Motion for Summary Judgment on Downey's Defamation Counterclaim (Docket # 256).

11

Christopher Downey, Defendants' Ex. D at 121).  The members also asked Downey what they were supposed to do.  (Defendants' Ex. D at 171).  Several members even sent Downey copies of Kentner's non-party document requests.  (Defendants' Ex. D at 171-72).

John Wright, an insurance agent and producer for Forrest Sherer Insurance Company, had placed two of his public entity customers with IPEP during the time that Kentner sent the non-party document requests.  (Declaration of John Wright, Defendants' Ex. E at ¶¶ 2-3).  After reading Kentner's requests, those customers called Wright because they were concerned about their coverage with IPEP.  (Defendants' Ex. E at ¶ 4).  Wright understood that Downey was responsible for running IPEP's affairs, and he believed that Kentner was accusing Downey of illegal conduct.  (Defendants' Ex. E at ¶ 5).

Because of the number of calls Downey received from IPEP members, it sent letters to them and their brokers in an effort to stop any damage that may have been caused by Kentner's requests.  (Defendants' Ex. A at 187-88).  Downey had to use several of its employees' time and efforts in fielding calls from IPEP members and responding to their questions.  (Declaration of Randy Sapp, Defendants' Ex. F at ¶ 4).  This significantly diverted Downey employees' time and efforts from their daily job duties.  (Defendants' Ex. F at ¶ 4).

12

## II.     Summary Judgment Standard

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  Summary judgment is appropriate if  "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c). A genuine issue of material fact exists if there is sufficient evidence for a reasonable jury to return a verdict in favor of the non-moving party on the particular issue.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Eiland v. Trinity Hosp.*, 150 F.3d 747, 750 (7th Cir. 1998).

On a motion for summary judgment, the burden rests with the moving party to demonstrate "that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  After the moving party demonstrates the absence of a genuine issue for trial, the responsibility shifts to the non-movant to "go beyond the pleadings" and point to evidence of a genuine factual dispute precluding summary judgment.  *Id.* at 322-23.  "If the non-movant does not come forward with evidence that would reasonably permit the finder of fact to find in her favor on a material question, then the court must enter summary judgment against her."  *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 920 (7th Cir. 1994) (citing *Matsushita Elec. Indus. Co.*, 475 U.S. at 585-87; *Celotex*, 477 U.S. at 322-24; *Anderson*, 477 U.S. at 249-52.

13

Summary judgment is not a substitute for a trial on the merits, nor is it a vehicle for resolving factual disputes. *Waldridge*, 24 F.3d at 290. Therefore, in considering a motion for summary judgment, the court draws all reasonable inferences in favor of the non-movant. *Venters v. City of Delphi*, 123 F.3d 956, 962 (7th Cir. 1997). If genuine doubts remain, and a reasonable fact-finder could find for the party opposing the motion, summary judgment is inappropriate. *See Shields Enters., Inc. v. First Chicago Corp.*, 975 F.2d 1290, 1294 (7th Cir. 1992); *Wolf v. City of Fitchburg*, 870 F.2d 1327, 1330 (7th Cir. 1989). But if it is clear that a plaintiff will be unable to satisfy the legal requirements necessary to establish his case, summary judgment is not only appropriate, but mandated. *See Celotex*, 477 U.S. at 322; *Waldridge*, 24 F.3d at 920.

III.    **Discussion**

A.    **Plaintiff's First Amendment Claim**

To establish a claim under 42 U.S.C. § 1983 against Defendants and IPEP, Plaintiff must demonstrate that he was denied some right secured by the Constitution and/or laws of the United States, and that Defendants and IPEP deprived him of this right while acting under color of state law. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978); *Grosz v. State of Ind.*, 730 F.Supp. 1474, 1476-77 (S.D. Ind. 1990) (citations omitted). Specifically, in order to succeed on his Section 1983 claim against Defendants and IPEP for retaliation based upon the First Amendment, Plaintiff must show that (1) he engaged in speech which was constitutionally protected, (2) Downey terminated him because of that speech, and (3) Downey would not have terminated him in the absence of

14

his protected speech. *Spiegla v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004) (citing *Sullivan v. Ramirez*, 360 F.3d 692, 697 (7th Cir. 2004)).

In order to sustain a claim under Section 1983, Plaintiff must establish state action. (*Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982) ("The ultimate issue in determining whether a person is subject to suit under § 1983 is the same question posed in cases arising under the Fourteenth Amendment: is the alleged infringement of federal rights 'fairly attributable to the State?'"). A private party like Downey generally is not subject to liability for constitutional violations unless the alleged violations stem from the "exercise of a right or privilege having its source in state authority" and the private party can be described as a state actor. *Morfin v. City of East Chicago*, 349 F.3d 989, 1003 (7th Cir. 2003). A private party like Downey may be held responsible as a state actor in two circumstances: (1) "where the state effectively directs or controls the actions of a private party" to the extent that the state is responsible for his decisions, or (2) "where the state delegates a public function to a private party." *Payton v. Rush-Presbyterian-St. Luke's Medical Center*, 184 F.3d 623, 628 (7th Cir. 1999). Plaintiff fails to produce any evidence to satisfy either test.

First, IPEP is a private, not-for-profit entity. Because IPEP is not a state actor, there is no basis for holding either Downey or IPEP liable for any alleged constitutional violations.

Second, even if IPEP were a state actor, IPEP had no involvement in Downey's personnel decisions, including its decision to terminate Plaintiff. Indeed, Plaintiff admits

15

that neither Shanks, the President of IPEP, nor the IPEP board was aware of his

termination when it occurred in September 2002.  (*See* Plaintiff's Response Brief, Docket

# 249 at 32).

Third, even if IPEP were a state actor within the meaning of Section 1983, and

even if IPEP participated in the decision to terminate Kentner's employment with

Downey, Kentner's claim would still fail because his alleged speech was not protected by

the First Amendment as his alleged communication was made during the scope of his

employment with Downey.  (Defendants' Ex. B at 216-17; Defendants' Ex. M at ¶ 45).

Plaintiff was therefore not speaking as a citizen upon matters of public concern, but in his

capacity as an employee.  *Mills v. City of Evansville*, 452 F.3d 646, 647-48 (7th Cir.

2006) ("[B]efore asking whether the subject-matter of particular speech is a topic of

public concern, the court must decide whether the plaintiff was speaking 'as a citizen' or

as part of her public job.  Only when government penalizes speech that a plaintiff utters

'as a citizen' must the court consider the balance of public and private interests, along

with the other questions posed by *Pickering* [*v. Board of Education*, 391 U.S. 563 (1968)]

and its successors . . ."); *Youker v. Schoenenberger*, 22 F.3d 166-67 (7th Cir. 1994)

(plaintiff, a deputy tax assessor, did not engage in protected speech when he notified

authorities of his discovery of fraudulent homestead exemptions because he was acting in

his employment capacity in identifying and reporting the fraud and there was "simply no

evidence that Youker was speaking 'as a citizen' on a matter of public concern."); *see*

*also Gonzalez v. City of Chicago*, 239 F.3d 939, 941 (7th Cir. 2001) (plaintiff, an

16

employee of the Chicago Police Department, did not engage in protected speech when he reported police misconduct through internal reports because that was within the course and scope of his job duties); *Logan v. Indiana Dep't of Corrections*, 2006 WL 1750583, at *1 (S.D. Ind. June 26, 2006) ("If the speech giving rise to Defendant's punitive action against the speaker/employee occurred as part of the employee's job, then the government agency does not infringe any private liberties because the speech 'owes its existence to a public employee's professional responsibilities.'" (quoting *Garcetti v. Ceballos*, – U.S. – , 126 S.Ct. 1951, 1960 (2006)).

For the reasons stated above, Defendants' [Timothy R. Downey Insurance, Inc. and the Downey Retirement Trust] Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's First Amendment Claim, the Individual Defendants' Motion for Summary Judgment is **GRANTED**, and IPEP's Motion for Summary Judgment is **GRANTED**.

### B.    Plaintiff's Wage Claims for Unused Vacation, Personal, and Sick Days

Downey's vacation days policy provides that an employee is entitled to compensation for unused vacation days.  An employee, however, may not bank more than 20 vacation days at any one time.  (Downey Insurance Procedures Manual, Vacation Days, Plaintiff's Ex. C).

Plaintiff argues he is entitled to reimbursement in the form of compensation for 20 unused vacation days.  In support of his claim, he cites the court to the deposition of Randy Sapp, wherein Sapp testified that he could not recall if Plaintiff had any banked

vacation days, but that "there could have been some." (*See* Deposition of Randy Sapp, Plaintiff's Ex. B at 69). This evidence is too tenuous to substantiate his claim. Accordingly, Plaintiff's Motion for Summary Judgment[5] on a Portion of Plaintiff's Wage Claim Regarding His Earned, Banked But Unpaid Vacation Days, Sick Days, and Personal Days is **DENIED** with respect to any unused vacation days.

Downey's personal days policy explicitly states that "[e]mployees who terminate employment are not eligible to receive compensation for unused personal days." (Downey Insurance Procedures Manual, Personal Days, Defendants' Ex. R). Given the explicit wording of the personal days policy, Plaintiff is not entitled to compensation from Downey for two personal days. Defendants' Motion for Summary Judgment is therefore **GRANTED** with respect to Plaintiff's claim for compensation for two unused personal days, and Plaintiff's Motion for Summary Judgment on a Portion of Plaintiff's Wage Claim Regarding His Earned, Banked But Unpaid Vacation Days, Sick Days, and Personal Days is **DENIED** with respect to any unused personal days.

Downey's sick leave policy provides that sick leave is "not intended to provide additional vacation time." Additionally, the sick leave policy provides that "[s]ick time for eligible associates is a benefit designed to provide income while the employee is unable to work due to illness." The policy further provided "[u]nused sick time is banked for future use. Each full time employee may accumulate (10 days) in his/her account."

---

[5] Defendants did not move for summary judgment on Plaintiff's wage claim for unpaid vacation days.

(Downey Insurance Procedures Manual, Sick Days, Defendants' Ex. S). The court finds the policy language is unambiguous.  Plaintiff is only entitled to sick pay if he is sick. *McCae Management Corp. v. Merchants National Bank and Trust Co.*, 553 N.E.2d 884, 887 (Ind.Ct.App. 1990).  Defendants' Motion for Summary Judgment on Plaintiff's claim for compensation for his 10 unused sick days is therefore **GRANTED**, and Plaintiff's Motion for Summary Judgment on a Portion of Plaintiff's Wage Claim Regarding His Earned, Banked But Unpaid Vacation Days, Sick Days, and Personal Days is **DENIED** with respect to any unused sick days.

### C.      Plaintiff's ERISA Claim

Plaintiff's ERISA claim is premised on the fact that because Downey allegedly failed to properly pay him commissions he was owed, the Trust necessarily failed to properly credit his pension account by that same amount.  (*See* Amended Second Amended Complaint at ¶ 22). The court previously denied Plaintiff's Motion for Partial Summary Judgment on his unpaid commissions, and granted Defendants' Motion for Summary Judgment with respect to that portion of the motion addressing Plaintiff's unpaid commissions.  (*See* Docket # 281).  Accordingly, there is no basis for claiming that his pension was improperly funded.  Defendants' Motion for Summary Judgment on Plaintiff's ERISA claim is **GRANTED**.

### D.      Real Party in Interest

Downey's counterclaims for defamation *per se*, defamation *per quod*, tortious interference with a business relationship, and abuse of process, are based on the third-

19

party discovery requests that Plaintiff sent to IPEP members.  Plaintiff filed a motion for summary judgment on grounds that Downey is not the real party in interest to maintain its counterclaims.  This is because, according to Plaintiff, (1) the third-party discovery requests neither inquire about nor request documents concerning Downey, and (2) Downey is merely the attorney-in-fact for IPEP.

Rule 17(a) of the Federal Rules of Civil Procedure provides that "[e]very action shall be prosecuted in the name of the real party in interest."  Fed. R. Civ. P. 17(a); *Metal Forming Tech., Inc. v. Marsh & McLennan Co.*, 224 F.R.D. 431, 434 (S.D. Ind. 2004). Rule 17(a) requires that actions are brought by plaintiffs entitled to enforce rights granted by the relevant substantive law.  *Allied Fidelity Ins. Co. v. Continental Ill. Nat'l Bank and Trust Co. of Chicago*, 677 F.Supp. 562, 563 (N.D. Ill. 1988) (applying federal law as to real party in interest rules and applying the Indiana substantive law as to the substantive right to bring an action); *see Firestone v. Galbreath*, 976 F.2d 279, 283 (6th Cir. 1992) (holding that the real party in interest is the person who possesses the particular right to be enforced).

Having reviewed the allegations which support Downey's counterclaims, the court finds Downey is suing for its own alleged injuries, not in its capacity as the attorney-in-fact on behalf of IPEP.  Moreover, Downey was implicated in Plaintiff's third-party discovery requests as evidenced by the phone calls Downey received from IPEP members.  Accordingly, and as demonstrated in Downey's papers filed with the court, Indiana substantive law entitles Downey to sue for the injuries it has allegedly suffered

20

due to Plaintiff's actions.  Plaintiff's Motion for Summary Judgment on the Issue of

Timothy R. Downey Insurance, Inc. as Being Not the Real Party in Interest to Maintain

its Counterclaims is therefore **DENIED**.

The merits of Downey's counterclaims are addressed below.

### E.  Downey's Counterclaim for Defamation *Per Se* and Defamation *Per Quod*

Under Indiana law, a communication is defamatory *per se* if it imputes criminal

conduct or misconduct in a person's trade, profession, or business.  *Glassock v. Corliss*,

823 N.E.2d 748, 754 (Ind.Ct.App. 2005).  "If words impute one of those conditions, they

are considered "'so obviously and naturally harmful that proof of their injurious character

can be dispensed with.'"  *Cortez v. Jo-Ann Stores, Inc.*, 827 N.E.2d 1223, 1230

(Ind.Ct.App. 2005) (quoting *Levee v. Beeching*, 729 N.E.2d 215, 220 (Ind.Ct.App.

2000)).  To be defamation *per se*, the communication must be defamatory on its face; in

other words, "the defamatory nature of the [communcation] must appear without

reference to extrinsic facts or circumstances."  *Cortez*, 827 N.E.2d at 1230.  If defamation

*per se* is found, the plaintiff is "entitled to presumed damages 'as the natural and probable

consequence' of the *per se* defamation."  *Id*. (quoting *Rambo v. Cohen*, 587 N.E.2d 140,

145 (Ind.Ct.App. 1992)).

As previously stated, a significant part of Downey's business involved serving as

the attorney-in-fact for IPEP, including investing its funds.  In his third-party document

requests, Plaintiff informed IPEP members that Downey had violated Indiana Code § 5-

13-9-1 and other laws when it invested IPEP funds in EPIC, a private insurance company. In other words, Plaintiff accused Downey of criminal conduct because violating Indiana Code § 5-13-9-1 is a Class B misdemeanor. *See* Indiana Code § 5-13-14-4. In addition to accusing Downey of criminal conduct, Plaintiff also accused Downey of misconduct in its trade or business of acting as the attorney-in-fact for IPEP. Plaintiff's allegations that Downey engaged in criminal conduct and/or misconduct in its trade or business amounts to defamation *per se*. *See Cortez*, 827 N.E.2d at 830.

Downey also pled in the alternative that Plaintiff's communications were defamatory *per quod*. Because the facts establish that Plaintiff engaged in defamation *per se*, the court need not address Downey's alternative claim. Accordingly, Defendants' Motion for Summary Judgment is **GRANTED** with respect to its counterclaim for defamation *per se*, and Plaintiff's Motion for Summary Judgment on Timothy R. Downey Insurance, Inc.'s Counterclaims of Defamation *Per Se* and Defamation *Per Quod* is **DENIED**.

### F.     Downey's Counterclaim for Abuse of Process

An abuse of process action "requires a finding of misuse or misapplication of process for an end other than that which it was designed to accomplish." *Display Fixtures Co. v. R.L. Hatcher, Inc.*, 438 N.E.2d 26, 31 (Ind.Ct.App. 1982). To succeed on its abuse of process claim, Downey needs to show: (1) ulterior purpose or motives, and (2) a willful act in the use of process not proper in the regular conduct of the proceeding. *Watson v. Auto Advisors, Inc.*, 822 N.E.2d 1017, 1029 (Ind.Ct.App. 2005). A party's

intent is irrelevant where his "acts are procedurally and substantively proper under the circumstances." *Id.* (quoting *Reichhart v. City of New Haven*, 674 N.E.2d 27, 31 (Ind.Ct.App. 1996), *trans. denied.*, 683 N.E.2d 593 (Ind.1997)). "A party may not be liable for abuse of process where legal process has been used to accomplish an outcome which the process was designed to accomplish." *Id.*

Downey argues that Plaintiff "had an ulterior purpose or motive: to notify the IPEP members that they had been 'kept in the dark' regarding Downey's criminal activities, if he could prove it." (Defendant Timothy R. Downey Insurance, Inc.'s Brief in Response to Plaintiff's Motion for Summary Judgment on Downey's Defamation Claim, Docket # 264 at 26). However, Plaintiff's act of serving the third-party document requests to IPEP members was proper in the regular conduct of the proceedings given the fact that Plaintiff had originally brought a whistleblower claim in the instant lawsuit. Thus, his intent and/or motive is irrelevant. Accordingly, the court **DENIES** Defendants' Motion for Summary Judgment on Downey's counterclaim for abuse of process, and **GRANTS** Plaintiff's Motion for Summary Judgment on Timothy R. Downey Insurance, Inc.'s Counterclaims of Tortious Interference with a Business Relationship and Abuse of Process with respect to Downey's counterclaim for abuse of process.

### G.    Tortious Interference

To establish a claim for tortious interference with a business relationship, Downey need only show the following: (1) the existence of a valid relationship; (2) Plaintiff's

23

knowledge of the existence of the relationship; (3) Plaintiff's intentional interference with that relationship; (4) the absence of justification; and (5) damages resulting from Plaintiff's wrongful interference with the relationship.  *Rice v. Hulsey*, 829 N.E.2d 87, 91 (Ind.Ct.App. 2005).  Indiana law also requires Downey to show that Plaintiff acted illegally.  *Bradley v. Hall*, 720 N.E.2d 747, 751 (Ind.Ct.App. 1999).

Downey argues that the illegal conduct standard is met because Plaintiff's actions amount to an abuse of process.  *See Moffett v. Gene B. Glick Co., Inc.*, 604 F.Supp. 229, 239 (N.D. Ind. 1984), *overruled on other grounds, Reeder-Baker v. Lincoln Nat'l Corp.*, 644 F.Supp. 983 (N.D. Ind. 1986) (Court denied motion to dismiss intentional interference claim where plaintiff "pleaded several illegal acts by [defendants]: violation of 42 U.S.C. § 1981, invasion of privacy, and infliction of emotional distress.").   As noted above, Downey's counterclaim for abuse of process is dismissed.  Accordingly, there is no basis to find that Plaintiff's actions were "illegal."  The court therefore **DENIES** Defendants' Motion for Summary Judgment on Downey's counterclaim for tortious interference, and **GRANTS** Plaintiff's Motion for Summary Judgment on Timothy R. Downey Insurance, Inc.'s Counterclaim of Tortious Interference With a Business Relationship and Abuse of Process with respect to Downey's tortious interference claim.

## IV.    Conclusion

For the reasons explained in this Entry, the court (1) **GRANTS** in part and **DENIES** in part Defendants' Motion for Summary Judgment (Docket # 216); (2)

**GRANTS** Individual Defendants' Motion for Summary Judgment (Docket # 220); (3)

**GRANTS** IPEP's Motion for Summary Judgment (Docket # 224); (4) **DENIES**

Plaintiff's Motion for Summary Judgment on a Portion of Plaintiff's Wage Claim

Regarding His Earned, Banked But Unpaid Vacation Days, Sick Days, and Personal Days

(Docket # 233); (5) **DENIES** Plaintiff's Motion for Summary Judgment on Timothy R.

Downey Insurance, Inc.'s Counterclaims of Defamation *Per Se* and Defamation *Per*

*Quod* (Docket # 215); (6) **GRANTS** Plaintiff's Motion for Summary Judgment on

Timothy R. Downey Insurance, Inc.'s Counterclaims of Tortious Interference With a

Business Relationship and Abuse of Process (Docket # 227); and (7) **DENIES** Plaintiff's

Motion for Summary Judgment on the Issue of Timothy R. Downey Insurance, Inc. as

Being Not the Real Party in Interest to Maintain its Counterclaims (Docket # 223).

The following claims remain: (1) Plaintiff's wage claim for unpaid vacation days

(Count I); and (2) Downey's counterclaim for unjust enrichment/restitution

(Counterclaim V).


**SO ORDERED** this <u>18th</u> day of September 2006.

RICHARD L. YOUNG, JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Alice L. Bartanen
MEAD, MEAD & CLARK, PC
alice@salemlaw.com

Monica Renee Brownewell Smith
BARNES & THORNBURG LLP
monica.brownewell@btlaw.com

Blake J. Burgan
SOMMER BARNARD ATTORNEYS, PC
bburgan@sommerbarnard.com

Karoline E. Jackson
BARNES & THORNBURG LLP
kjackson@btlaw.com

Michael C. Terrell
SOMMER BARNARD ATTORNEYS, PC
mterrell@sommerbarnard.com

Robert S. Kentner
bobkentner@yahoo.com